St. Louis, Iron Mountain & Southern Railway Company v. Baker.

Opinion delivered July 3, 1911.

1. Master and servant—assumed risk—contributory negligence.— Where it was the duty of an employee to make his own place and manner of work safe, and he neglected to do so, and was killed in consequence thereof, no recovery can be had by his personal representative, both because he assumed the risk of his failure to perform his duty and because his own negligence contributed to his death. (Page 164.)

2. Same—contributory negligence.—Plaintiff's intestate, while engaged in repairing defendant's boiler house, and having the discretion to select his own time and place to work, undertook to use the tracks of a crane in making such repairs, but failed to notify the crane operator or any one else of his intention to do so, and was crushed and injured by the crane being moved toward him in ignorance of his danger. Held that plaintiff was not entitled to recover. (Page 165.)

Appeal from Saline Circuit Court; W. H. Evans, Judge; reversed.

STATEMENT BY THE COURT.

This is a suit brought by appellee against appellant to recover damages on account of fatal injuries received by G. E. Baker, while working in the boiler shop of appellant in the city of Argenta. Baker was employed by appellant as a carpenter, and, in company with a fellow workman named Vernon, was sent to make some repairs on the windows of the boiler shop. The boiler shop is a high room, with a row of windows around it 22 feet from the ground. There are two electric cranes in the shop, a large one in a larger room of the shop, and a small one in a smaller room, separated by a row of pillars. The larger crane is used for picking up and carrying heavy boilers and machinery. The smaller crane was used for picking up smaller machinery. It consists of a heavy beam running across the room and resting at each end on trucks, which run upon a track about two feet below the row of windows above referred to. Suspended from the beam are hooks and other appliances used for taking hold of large sheets of boiler iron and other things which the workmen in the shop may desire to have moved for them from one machine to the other. The crane is so arranged that when the load is thus

attached it is left clear of the heads of the men on the floor and carried and deposited wherever desired by the workmen. The crane operator sits in a cage about fifteen feet from the floor at one end of the room and controls the movements of the crane and the hooks by means of levers. Baker and Vernon had been engaged for some time about various other buildings of the shops and about this building making repairs to doors and windows wherever needed. They were under a foreman named Waits, who gave them instructions from time to time to do necessary work of repairing the building, such as windows, doors, etc., and instructed them to repair this particular window mechanically. On the forenoon of the day Baker was injured, at about 11 o'clock, they went up to the boiler shop to examine the windows, with a view to repairing any defects that might be discovered. They examined the windows from the ground below, and saw that the sill of one near the middle needed repairs. They went up on the outside of the building to the window, examined the defects, and determined what material they would need to make the repairs. They placed their order for the mill work and went away. Along in the afternoon, between 3 and 4 o'clock, they returned to do the work. They approached the boiler shop from the side where their ladder was set up and went up to the window. While there they decided that it would be necessary for them to get up on the crane tracks in order to do the work. They did not, at any time, notify any one, the crane operator or any one else connected with the company, or the management of the crane, that they were going to do the work in this manner. They went out on the track and began to work on the window sash, which was hung on a pivot and had to be removed in order to make the repairs. They passed a rope around it to keep it from falling when they knocked out the pivots. While so doing, the crane trucks were moved towards them by the crane operator. They were not observing the movement of the trucks, nor was the crane operator observing them, so the trucks came in contact with them, and so injured Baker that he shortly afterwards died.

This suit was brought by Mrs. Baker, his wife, as administratrix, for damages to his estate and the next of kin. The negligence charged in the complaint is that the servants and

employees of defendant "operating and in charge of said crane, without warning of any kind, recklessly, negligently and carelessly ran said crane to the place where said intestate was working and against said intestate with such force and violence as to jam him against the brick wall of said building that supported the window frames; that it did not furnish her intestate with a safe place to work; that it failed to keep a lookout for him; that it did not have its crane properly equipped with a signal gong to warn persons in danger of the approach of said crane." The defendant answered, denying the allegations of the complaint and set up, affirmatively, the defenses of assumed risk and contributory negligence.

The court, in its instruction numbered 1, given at the request of the appellee, in effect told the jury that, if the defendant "negligently run or permitted its crane to be run, against Baker, thereby injuring him, from the results of which injuries he died, without giving him any warning or signal of its approach, your verdict should be for the plaintiff." And the court refused the prayers of appellant, in effect telling the jury that it was the duty of Baker, under the facts and circumstances of this case, to give notice to the crane operator that he was going to occupy the crane tracks while making repairs on the windows. And the court permitted argument of counsel on behalf of appellee to the effect "that it was the duty of foreman Waits of the bridge and building department to have notified Stevens, the master mechanic, and that it was then the duty of Stevens to have notified Elkins, the foreman of the boiler shops, and that it was then the duty of Elkins to have notified Maxey, the crane operator, of the presence of the deceased on defendant's crane tracks while he was repairing the window, and that the failure of these agents to so act was negligence on the part of the defendant for which the defendant was liable in this case."

There was a verdict in favor of the appellee for the benefit of the estate in the sum of $1,000 and for the widow and next of kin in the sum of $9,000. Judgment was rendered against the appellant for these sums, and to reverse that judgment this appeal has been duly prosecuted. Other facts are stated in the opinion.

*W. E. Hemingway, E. B. Kinsworthy, Powell & Taylor* and *James H. Stevenson,* for appellant.

1. The court erred in refusing to give an instruction requested by appellant to the effect that if the jury should find from the evidence that deceased went upon the crane track, that it was obviously dangerous for him to do so, and that he failed to notify the crane operator of his presence upon the track, then deceased was guilty of contributory negligence, and their verdict should be for the defendant. 76 Atl. 865; 71 Minn. 150, 154, 73 N. W. 217; 63 N. Y. Sup. 290, 49 App. Div. 408; 150 Mass. 422, 23 N. E. 220; 110 Ala. 266; 96 Va. 430, 31 S. E. 694; 99 Ga. 111; 167 Mass. 52, 44 N. E. 1075.

2. Under the evidence in the case, it was not the duty of appellant to instruct the deceased as to where he should stand when attempting to do the work, nor was it appellant's duty to instruct him as to any obvious or patent dangers to which he might be exposed while doing the work. Deceased assumed these risks when he undertook to do the work. If, having sufficient intelligence to enable him to see and appreciate the dangers to which he was exposing himself, he knowingly undertook, while engaged in the work assigned to him by the foreman, to occupy a place of danger, although he may have deemed it necessary to do so while engaged in this particular work, he assumed the risks incident thereto, and thereby dispensed with any obligation on the part of the appellant to furnish him with a better place. It was not, under the facts of this case, for the jury to determine whether the place occupied by deceased at the time of receiving the injury could, with reasonable care on the part of appellant, have been made safe. 1 Labatt, Master and Servant, § 26; 117 Mo. 405, 412, 22 S. W. 1081; 90 Ga. 491, 16 S. E. 212.

3. The fact that other cranes in the shops were equipped with bells or signals does not warrant the conclusion that appellant was negligent in failing to place a signal on this particular crane, and deceased had no right to assume that, because other cranes were equipped with signals, this one was likewise so equipped. It was Baker's duty, before placing himself on the crane track, to use ordinary care to ascertain whether the crane was equipped with a signal and how it was

used in the operation of the crane.   1 Labatt, Master and Servant, § 264; *Id.* § 35; *Id.* § 38; 168 Mass. 408, 47 N. E. 111; 90 Ark. 145; 92 Ark. 138; 76 Atl. 866.

4.   The undisputed evidence clearly shows that deceased assumed the risk, and that he was guilty of contributory negligence, while it fails to show any negligence on the part of appellant, or any legal liability on its part.   76 Atl. 866.

*B. D. Brickhouse* and *Bradshaw, Rhoton & Helm,* for appellee.

1.   The court properly refused to give the second instruction requested by appellant, because it was not responsive to the evidence.   There is no evidence in the record to the effect that the place was either obviously dangerous or dangerous at all.

It appears from the evidence that Vernon and Baker were especially instructed on this particular day to do this piece of work.   Under the McCafferty case, 76 Atl. 865, relied on by appellant, it was under the duty to exercise ordinary care to protect them from other dangers while there. If notice to others of the dangerous situation was necessary for the protection of Vernon and Baker, appellant was bound to give it;  and if the operator was not informed in some way, then the failure of appellant to inform him was the proximate cause of the injury, for which it is liable.

2.   Deceased did not assume any risk growing out of the defendant's negligence.   The risks assumed by an employee are such perils as exist after the employer has used due care and precaution to guard the former against danger by providing for him a reasonably safe place to work in.   85 Ark. 509; 64 L. R. A. 146; 29 Kan. 632; 59 L. R. A. 306; 1 Labatt, Master and Servant, 23 § 15;   *Id.* 131 § 52;   *Id.* 448 § 209; *Id.* 445 § 208;  89 Ark. 427;  77 Ark. 367;  67 Ark. 218;  90 Ark. 223;  87 Ark. 400.

3.   Whether or not the deceased assumed the risk of going upon the crane track was a question for the jury to determine from the evidence with proper instructions as to the primary duty of the master to see that no latent or non-obvious dangers existed of which the employee was not informed or warned at the time of undertaking the work, and that the negligence of the master is never one of the risks assumed by the servant.

143 C. C. A. 286; 75 N. E. (Ind.) 152; 179 Fed. 1017; 192 N. Y. 179; 212 Ill. 268.

Wood, J., (after stating the facts.)   The uncontroverted evidence shows that, if the crane operator had been notified of the presence of Vernon and Baker on the crane tracks before Baker received his fatal injuries, the same could and would have been avoided.

The uncontroverted evidence shows that it was not the duty of the crane operator to observe the crane tracks overhead for the purpose of discovering any one who might be engaged at work there without first being notified that such persons would be employed in work that required their presence on the crane tracks.   The undisputed evidence shows that the only duty of the crane operator was to operate the crane so as to avoid injury to those working on the floor of the shop, unless especially notified that the crane tracks were to be used by those doing work overhead.   If necessity demanded that the tracks of the crane be occupied by the employees in the performance of the particular work, then it was the duty of the appellant, through its foreman Waits, or of the employees engaged in the particular work, as the case might be, to notify the crane operator of that fact, so that he might be on the lookout for them and thereby avoid injury to them.   On other occasions it became necessary for employees of appellant to use the crane tracks for the purpose of washing the windows. At these times the crane operator was notified of their presence so that he might avoid injury to them in the operation of the crane.   Witness Thomas, the crane operator, testified concerning this that:   "Unless I was notified that some one was up at one of these windows, I wouldn't look for any one at these windows when I would be operating the crane.   There was a negro once that went up there to wash the windows off.   He notified me that he was up there.   He was washing from the inside.   Unless I had that notice I wouldn't look up there for any one."   The testimony shows that, when the crane tracks were to be used for the purpose of washing the windows, as they were annually, the employee whose duty it was to perform that work, went up on the inside of the building by way of the stairway leading to the operator's cage, got on the beam of the crane, and thence moved over to the wall, and was carried by

the crane operator from window to window on the crane. In the performance of this work, therefore, the crane operator necessarily had notice of the use of the crane tracks for the purpose of doing the overhead work.

The uncontradicted testimony in the case, therefore, shows that the proximate cause of the death of Baker was the absence of notice to the crane operator that Baker was going to occupy the crane tracks while engaged in the work of repairing the window. If the appellant through its foreman, Waits, had or should have had notice that it was necessary to occupy these tracks in order to fix the window, then it was its duty to have notified the crane operator of that fact when Vernon and Baker were sent to perform that work. But if, on the other hand, Waits did not know, and if it was not his duty to know, that it was necessary for the workmen to stand on the crane tracks while repairing the window, then it was not his duty to have notified the crane operator of the probable presence of Vernon and Baker on the crane tracks at the time Baker received his fatal injuries. The effect of the uncontradicted evidence is that the duty of notifying the crane operator of their presence on the crane tracks on the day of the injury to Baker devolved on Vernon and Baker. While there is evidence to show that Vernon and Baker had special instructions to do this work, that the window was pointed out to them with directions to fix the same, and that they were instructed to do the work mechanically, and while there was evidence to the effect that the only way in which the work could be done mechanically was to stand on the crane tracks and take the window out in the way that witness Vernon describes that it was done, yet the uncontroverted evidence shows that Waits did not know that to do the work mechanically required Vernon and Baker to occupy the crane tracks. In other words, while the instructions to Vernon and Baker were to do their work generally, and this work in particular, mechanically, it was left to them to determine what was necessary to be done in order to perform the work in a mechanical manner. There is no evidence in the record to justify the inference that Waits knew that it was necessary, or that it would be necessary, for Vernon and Baker to occupy the crane tracks in order to repair the window. While there is evidence that Waits knew of the defect in

the window, and that the defect could have been discovered from the ground, there is no evidence in the whole record to warrant the conclusion that Waits knew, or should have known, that, in order to repair the defect, it might become necessary for Vernon and Baker to occupy the crane tracks. The instructions to Vernon and Baker were to fix the window and to fix it mechanically. They, under the uncontradicted evidence, were the sole judges of what was necessary to be done in order to repair the window in a mechanical way. The uncontradicted evidence shows that Vernon and Baker themselves did not know that it was necessary to occupy the crane tracks in order to repair this window in a mechanical way until they had gone up from the outside and examined the same. It was only after investigation that they themselves determined that it was necessary to go on the inside and stand on the crane tracks while doing the work. This duty, under the uncontroverted evidence, was delegated to them, and when they ascertained that it was necessary to occupy the crane tracks, which placed them in a place of obvious danger while performing their work, they should have notified their foreman, Waits, of that fact, so that he might see that the necessary notice was communicated to the crane operator. The appellant undoubtedly would have been liable had Waits been notified by Vernon and Baker that, in repairing the window, it would be necessary for them to stand on the crane tracks. Appellant would have been liable had the crane operator been notified directly by Vernon and Baker of that fact. But it was not the duty of Waits to have so notified the crane operator in the absence of notice to him from Vernon and Baker, because, under his instructions to Vernon and Baker, it was their duty to ascertain what was necessary to be done in order to repair the window. While there is evidence to show that Waits instructed Vernon and Baker to fix this window, there is no evidence to warrant the conclusion that it was his duty to tell them how to do it. On the contrary, the uncontroverted evidence shows that it was left to them to determine how the window was to be repaired. Vernon testified: "He didn't give me any instructions as to where to stand or where not to stand. My judgment was that, in order to do it in a mechanical way, it was necessary to take the window out." Certainly,

Waits, the foreman of Baker, was not chargeable with knowledge of the manner in which the window should be repaired, and of the place where it was necessary for Vernon and Baker to stand in order to do the work, in the absence of notice from them of these facts, when the very duty of obtaining that knowledge and of communicating the same to Waits was imposed upon them.

The case comes within the rule announced by this court in *Southern Anthracite Coal Co.* v. *Bowen*, 93 Ark. 140, where we said: "If appellant deputed to Thrasher the duty of making the wire rope secure, and he neglected to perform this duty, he assumed the risk of injury from his negligence in failing to discharge the duty imposed on him, and the master is not liable to him for the injury resulting." See cases cited.

In the case of *American Tin Plate Co.* v. *Smith*, 143 C. C. A. 286, cited by appellee (a crane case), in which the appellant was held liable to appellee, the appellant directed the appellee to engage in the work of fastening certain cleats for the hanging of electric wires to a certain tall pillar in appellant's mill. The appellee was directed to do the particular work of putting on the cleats in a particular way which placed him in a place of danger that appellant knew to be dangerous at the time it directed him to do the work. Appellant knew at the time precisely how the work should be done, and did not leave it to appellant's judgment to ascertain how it should be done. The facts of that case are entirely different from this.

In the case of *McMenamy* v. *Iron & Steel Co.*, 144 Mo. App. 707, another case cited, the deceased was killed on Sunday, a day that was used by the defendant as repair day, at which time the machinery, furnaces and appliances were gone over and all necessary repairs made. During the week the cranes were in constant operation, and none of the men were upon the tracks, but on Sunday the cranes were only operated as occasion should require, and men were sent up on these tracks to make whatever repairs should be needed. On the Sunday in question deceased and fellow workmen were repairing crane A over the middle room. The south end of this crane was a little west of and very near one of the posts between the south room and the middle room—so close that a man could not pass between the corner of the crane and the post. These men

were at work replacing a wheel at the south end of crane A. Deceased had been sent below, and, on his return, climbed up the west side of the post near which they were working, and as he was passing around this post on the south side to get to his place to work he was caught by the north end of the crane over the south room called crane B, and crushed to death. None of the cranes were equipped with a bell, gong or other device to give a warning of their approach nor any means used to warn workmen of the movement or approach of the cranes. The Supreme Court of Missouri, in part, said:

"It will not do to say that this was an exceptional case, and one that could not be reasonably anticipated on the part of defendant, for the evidence shows that Sunday was, generally speaking, repair day, and whenever any of the cranes or the track or wires used by the electrical department should need repairing, it would be necessary for men to be upon this track, twenty-five feet from the floor, with little or no chance to avoid danger, should it appear suddenly, and at this particular time there were workmen on crane B who were notified before it moved. The employer should also have known that there were other workmen upon crane A, and the same regard for the safety of its employees which induced it to warn workmen upon crane B before moving it would have suggested that it warn workmen upon crane A working near the rail of crane B who were liable to be required to pass up and down, climbing the post just as deceased did at that time."

The facts of that case clearly differentiate it from this case. There the presence of the workmen at the particular place where deceased was injured on Sunday was to be anticipated. He was doing a particular work at a particular time and in a special manner which appellant knew or should have known. The work was being done in the usual way. The doctrine making it the duty of the master to exercise ordinary care to provide a safe place for his employees to work and to protect them while engaged in their work, of course, applies in a case of that kind. But here, as we have seen, the uncontroverted evidence made it the duty of Baker to exercise ordinary care to make his own place and manner of work safe, which he could have easily done by notifying his foreman or the crane operator of the time and manner in which he was performing his work.

Under his contract of employment the manner of performing the work assigned to him was left to his judgment and discretion. If, by reason of the method he adopted for doing the work, the same became dangerous, and it was necessary for him to have protection from the master, it was his duty to have notified the master of that fact. He assumed the risk of his failure to perform that duty, and also was guilty of negligence which contributed to his death. To use the language of the court in *McCafferty* v. *Maine Cent. R. Co.*, 76 Atl. 866, we feel compelled to say "that the distressing injury of the plaintiff was so clearly the result of his own negligence that the verdict of the jury ought not to be allowed to stand. Their conclusion was manifestly wrong."

The judgment is therefore reversed, and the cause is remanded for new trial.

HART, J., dissents.