## CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v. CRAWFORD.

### Opinion delivered April 14, 1913.

MASTER AND SERVANT—ASSUMED RISK.—Where plaintiff is directed to hang a door on a railway freight car, and plaintiff has had experience as a car repairer, and, while working on the same, the door fell and injured plaintiff, he will be held to have assumed the risk of his employment, because of his failure to hang the door properly.

Appeal from Union Circuit Court; *Geo. W. Hays,* Judge; reversed.

#### STATEMENT OF FACTS.

The appellee was in the employ of appellant as a carpenter on what is known as the "rip-track" in the yards of appellant in the city of El Dorado. He received an injury by a car door jumping the track and severely crushing his hand. He alleged in his complaint that the appellant was negligent in not exercising ordinary care to furnish him with reasonably safe means and instruments with which to work. The appellant answered, denying the material allegations of the complaint, and setting up that it was the duty of the appellee to correct the defect or have the same corrected before putting the

hinges on the door, and that it was the duty of the appellee when he hung the door to see that the hinges would properly work before attempting to close the door. It therefore charged that the appellee's injury was the result of a risk assumed by him under his contract of employment.

The facts stated most strongly for the appellee are substantially as follows: Appellee had instructions from his foreman to fix a certain car door to a car which was then on the rip-track. The foreman told him that he would find a certain pair of hinges at the blacksmith shop, which had been laid out for him to place on the door. Appellee got the hinges or hangers and put them on the door and told his foreman he had the door ready, and the foreman gave him orders to get some negroes and put it up. The foreman told appellee that there was no slide to be had to place on the bottom of the door, and that instead of placing a slide on the bottom of the door to cut off about two inches of the same. The negroes were employed by the appellee to assist him. He was not their boss. They were coemployees with him, acting under the direction of the foreman. After the negroes had hung up the door appellee was trying to shove same up from the bottom with a crowbar, when the door fell and mashed his hand. There was a door track at the bottom of the door on the car, but no slide, and the foreman therefore directed the appellee to cut off the door so it would go behind the track. Appellee, in closing the door, had a crowbar attempting to force it behind the track. The hangers were already made when appellee went to get them. He had nothing to do but to put on the hangers or hinges that were furnished him. If the hinges had been made sufficient size and a slide had been placed on the lower track of the car there would have been no necessity for appellee using the crowbar, and there would have been no occasion for the door jumping the track. When appellee put the hangers on the door it was 75 or 100 yards away from the car on which he was to hang it, and he had not noticed the

slide. He had been working for appellant about eighteen months, as car repairer, when the accident happened. He had put about a dozen hangers on different doors. Knew that they put different sorts of hangers on different sorts of slides. He didn't look at the slide to see whether the hangers would work on it or not. The hangers were proper for slides where there were no bolt heads, or where the bolt heads were below the point where the hangers came to, so the slide would not catch the hanger. If the blacksmith had been asked to open up the hangers so they would go over the bolt heads he would have done it. If appellee had looked at the slide he could have seen that the hangers would not go over the bolt heads, but he had not worked any on the car and paid no attention to the door slide. The blacksmith was there to do anything appellee should tell him to do with reference to those hangers or anything else. The blacksmith was under the direction of the car repairers, such as appellee, and would change the hangers or fix them as appellee told him to do. There was no one working with appellee at the time he got hurt. He pulled the door himself and that caused it to fall. It would not have fallen if appellee had not touched it. No one pointed out the hinges that appellee was to use, but he was told that they were at the blacksmith shop and went and found them there. The negroes hung the door under the direction of appellee, putting it right where he told them.

The appellant asked a peremptory instruction, which the court refused, and the court gave, at the request of appellee, prayers for instructions which submitted to the jury the question as to whether or not appellant was negligent in failing to exercise ordinary care to furnish appellee a safe place and safe appliances, to which appellant duly excepted. Judgment was rendered in favor of the appellee for $250, and appellant duly prosecutes this appeal.

*Thos. S. Buzbee* and *Geo. B. Pugh,* for appellant.

1. There is no evidence to support the verdict, and the peremptory instruction for defendant should have been given.

2. The court erred in its charge to the jury, and the error was not cured by a correct instruction given for defendant.    100 Ark. 433; 96 *Id.* 311.

*Mahony & Mahony,* for appellee.

There is no error in the court's charge.    98 Ark. 257; 87 *Id.* 280; 96 *Id.* 314.

· WOOD, J., (after stating the facts).    The instruction which submitted to the jury the issue as to whether or not appellant had failed to exercise ordinary care was abstract and prejudicial.    There was no testimony to warrant the court in submitting any such issue to the jury.

Under the undisputed evidence, the court also should have granted appellant's prayer for instruction No. 3, to the effect that it was the duty of the appellee to see that the appliances with which he was working were safe and suitable and that his injury resulted from his failure to perform that duty, and therefore he could not recover.

It clearly appears, from the undisputed evidence, that the injury to appellee was caused because the hinges or hangers were not suitable to work on the door and on the door slide where they were placed.    Appellee testified that if the hinges had been made of sufficient size there would have been no necessity for his using the crowbar in the manner he did, which caused the door to fall and injure him.    This defect in the size of the hinges was the proximate cause of the appellee's injury, and it was the duty of appellee under his contract of employment to see that the hangers or hinges properly fit the runners, otherwise he could not properly hang the door, and that was a part of his duty.    He was an experienced car repairer, and, as he says, had probably put hangers on a dozen doors.    The blacksmith who made the hangers was under appellee's direction as a car re-

pairer and would have changed the hangers or fixed them as appellee should direct.

The undisputed facts bring the case clearly within the rule announced by this court in the recent case of *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Baker*, 100 Ark. 156-164, where the court, quoting from the case of *Southern Anthracite Coal Co.* v. *Bowen*, 93 Ark. 140, said: "If appellant deputed to Thrasher the duty of making the wire rope secure, and he neglected to perform this duty, he assumed the risk of injury from his negligence in failing to discharge the duty imposed on him, and the master is not liable to him for the injury resulting."

For the error in refusing to give appellant's prayer for a peremptory instruction the judgment is reversed, and the cause is dismissed.