ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY
COMPANY *v.* BAKER.

Opinion delivered November 24, 1913.

MASTER AND SERVANT—DUTY TO FURNISH SAFE PLACE TO WORK—NEGLIGENCE.—Deceased, an employee of defendant railway company, was directed by the foreman to go upon certain crane tracks to make certain repairs, and the foreman knew when he went upon the tracks. *Held*, it was the duty of the foreman to notify the operator of the crane of deceased's dangerous position, and when he failed to do so, and deceased was killed by the operation of the crane, defendant will be held liable therefor.

Appeal from Saline Circuit Court; *W. H. Evans,* Judge; affirmed.

*E. B. Kinsworthy, H. S. Powell* and *T. D. Crawford,* for appellant.

1. The exceptions to the general rule making it the duty of the master to furnish the servant a safe place

to work are as well-established as the rule itself. The duty does not apply where the work is making a dangerous place safe; where the work itself makes the place unsafe or dangerous; where the character of the place for safety is constantly changing as the work progresses as the direct result of the servant's labor. 1 Bailey on Personal Injuries, § 81. For exceptions to the general rule devolving the master's duty upon the servant himself, see 100 Ark. 634; 93 *Id.* 140; 96 *Id.* 206; 76 *Id.* 68; 88 *Id.* 292; 78 *Id.* 213; 95 *Id.* 291; 97 *Id.* 486; 95 *Id.* 560; 101 *Id.* 201; 71 *Id.* 159. Here the servant assumed all the risks. Cases *supra.* 76 Atl. 865; 3 Labatt, M. & S., § § 953, 954. *Volenti non fit injuria.* Elliott on R. R., § 1298a; 4 Thompson, Negl., § § 3876-7-9; 1 White, Pers. Inj., § 257.

2. It is always objectionable to single out and thus emphasize an isolated fact. 75 Ark. 76; 76 Atl. 869.

3. There was no proof of what deceased's expectancy of life was. Plaintiff should have shown this and his earnings and the pecuniary benefit the next of kin had a reasonable expectation of receiving if deceased had lived. 51 Ark. 515.

4. The argument of the attorney for plaintiff was improper, misleading and prejudicial. 61 Ark. 130; 106 Ark. 362.

5. The injury was the result of deceased's own negligence. 76 Atl. 866; 179 Fed. 1016; 3 Labatt, M. & S., § 1252; 76 Atl. 865.

6. This case is fully developed and "there should be an end to litigation." The cause should be dismissed. 105 Ark. 290; 105 Ark. 258.

*Bradshaw, Rhoton & Helm, Mehaffy, Reid & Mehaffy* and *Ben D. Brickhouse,* for appellee.

1. On entering the master's service, the servant does not assume the risk of dangers arising from the negligence of the master unless he has knowledge of such negligence and appreciates the dangers arising therefrom. In the absence of such knowledge, the servant has the right to rely upon the assumption that the master has

performed his duty not to involve the servant in extra-ordinary hazards. 95 Ark. 295, and cases cited; 56 Ark. 206; 58 Ark. 66; 65 Ark. 138.

2. Under the testimony, it was clearly Wait's duty to notify proper persons in charge of the crane, or in the boiler shop, of the presence of the deceased while making repairs on the window. 85 Ark. 506; 100 Ark. 156; 76 Atl. 866; 179 Fed. 1017.

3. The evidence presents a situation where the question of contributory negligence was one where the minds of reasonable men might differ in their conclusions; hence it was proper to submit it to the jury. The court could not, in view of the evidence, declare, as a matter of law, that deceased was guilty of contributory negligence. 101 Ark. 424; 100 Ark. 53; 93 Ark. 93; 1 Labatt, Master and Servant, § 293; 100 Ark. 465; 101 Ark. 197; 99 Ark. 377.

4. Mere expressions of opinion by an attorney in argument to the jury will not be held as prejudicial. 93 Ark. 564.

WOOD, J. This is the second appeal in this case. The issues and facts on the first appeal are fully stated in *St. Louis, I. M. & S. Ry. Co.* v. *Baker,* 100 Ark. 156. The facts in the present record are substantially the same as they were on the first appeal, except that the present record shows that Vernon testified, in part, on the last trial, as follows:

Our foreman was Mr. Waits. He had instructed us to do the work mechanically. There was no other way to do the work mechanically than by going in on the crane rail and doing the work as we did it. We were to let the window down with a rope. He went over to the B. & B. shop and got the rope. When I was over there, I saw Mr. Waits. He asked us how we were getting along. I told him that we were getting along all right, and that we had to go up on the inside on that crane rail to take the sash out. He wanted to know when we would be back there, and I told him in about twenty minutes. It was something like thirty minutes before we went back there.

In our opinion on the first appeal, we said: "The uncontradicted evidence shows that Vernon and Baker themselves did not know that it was necessary to occupy the crane tracks in order to repair this window in a mechanical way until they had gone up from the outside and examined the same. It was only after investigation that they themselves determined that it was necessary to go on the inside and stand on the crane tracks while doing the work. This duty, under the uncontroverted evidence, was delegated to them, and when they ascertained that it was necessary to occupy the crane tracks, which placed them in a place of obvious danger while performing their work, they should have notified their foreman, Waits, of that fact, so that he might see that the necessary notice was communicated to the crane operator. The appellant undoubtedly would have been liable had Waits been notified by Vernon and Baker that, in repairing the window, it would be necessary for them to stand on the crane tracks." And further: "Waits, the foreman of Baker, was not chargeable with knowledge of the manner in which the window should be repaired, and of the place where it was necessary for Vernon and Baker to stand in order to do the work, in the absence of notice from them of these facts, when the very duty of obtaining that knowledge and of communicating the same to Waits was imposed upon them."

The proximate cause of the death of Baker was the absence of notice to the crane operator that Baker was going to occupy the crane track while engaged in the work of repairing the window. The appellant contended on the former appeal that the undisputed evidence showed that Vernon and Baker failed to notify the crane operator that it was necessary for them to stand on the crane tracks while repairing the window; that it was Baker's duty to have done so, and that having failed, he was guilty of contributory negligence, and, likewise, that he assumed the risk. The appellee, on the other hand, contended that it was Waits' duty to have notified the

crane operator that Baker would be on the crane track while the window was being repaired.

The language of the former opinion, above quoted, was used while discussing the issue thus presented. True, the court held that there was no testimony to support the appellee's contention, and sustained the contention of the appellant; but the language of the opinion above quoted was, at least, germane to the discussion of the issues under consideration, and, even if *obiter,* the doctrine announced was sound.

The testimony of Vernon on the trial tended to establish the fact that Waits received notice that Vernon and Baker would have to stand on the crane tracks in order to do the work Waits had directed them to do, and that he was notified of the time, approximately, when they would be there. Counsel for appellant suggest that a strong suspicion arises that this testimony of Vernon was manufactured to fit the opinion of the Supreme Court. Vernon testified that the reason he did not give such testimony on the former trial was that a question calculated to elicit the information was not asked by counsel on either side. At any rate, he gives an explanation why the facts shown by his present testimony were not developed at the former hearing, and the jury must have regarded it as a reasonable and truthful explanation, for their verdict shows that they accepted his testimony. It was a matter peculiarly pertaining to the credibility of the witness, and was for the jury to settle. This testimony, then, warranted the jury in finding that appellant's foreman knew that Vernon and Baker were going upon the crane tracks in obedience to his order to repair the window. He knew the place where they would stand, and the time when they would be at that place; yet he permitted them to occupy this dangerous position without notifying the crane operator of their presence and peril so that the latter might protect them. This testimony takes the case out of the doctrine of those cases where the master delegates to the servant the duty of making his place of work safe, or where the work itself

renders the place unsafe, or where the character of the place for safety is constantly changing as the work progresses as the direct result of the servant's labor. It is well settled that such instances are exceptions to the general rule making it the duty of the master to furnish a safe place to work; where the servant, for instance, is employed to wreck or tear down a structure, as an unsafe house or bridge, or is required to handle disabled cars, or to do the work of blasting and excavating in a mine. These are all instances of exceptions. In all such cases, the servant, in entering the employment and performing work devolving upon him, assumes the risks incident to such employment, because they are the hazards ordinarily incident to the character of the work which he undertakes to perform when he enters the service of his master. Appellant cites and relies upon many cases where the above doctrine has been announced by this court, but, under the changed conditions which the testimony of Vernon brought into the case, the court was warranted in submitting to the jury the question as to whether or not the appellant was negligent in failing to furnish its servant, Baker, a safe place in which to do the work that his foreman, Waits, had directed him to do.

Without discussing the instructions in detail, we are of the opinion that there was no reversible error in the charge of the court. The court, on behalf of the appellant, instructed the jury as follows: .

"You are instructed that, even though you should find that witness Vernon informed foreman Waits that the deceased would be on the crane track in a few minutes, yet, you are instructed that if you believe from the evidence this was done a very short time before the death of Baker, and if you further believe that, under the circumstances, deceased, as a reasonably prudent man, was not warranted in believing from all the facts and circumstances surrounding him, at the time he entered upon the crane track that the crane operator had been notified of the information which witness Vernon says he imparted

to witness Wait, then it was just as much the duty of deceased to have exercised reasonable care in looking and listening for the approach of the crane as if the said Waits had never heard of the intention of deceased to go upon the track." (No. 3.)

The court, in other instructions asked by appellant and modified by the court, correctly presented the respective contentions of the parties. The court, for instance, in appellant's prayer for instruction No. 10, which the court modified, told the jury:

"The jury are instructed that, under the evidence in this case, it was not the duty of the defendant company to instruct the deceased, Baker, as to where he should stand when attempting to perform the work undertaken by him, nor was it its duty to instruct him as to any obvious or patent dangers to which he might be exposed while doing said work. You are told that these risks were assumed by the deceased, and if he was injured by reason thereof, the defendant is not liable, and your verdict will be for the defendant, provided you find his death was not caused by any negligence of the defendant as alleged in plaintiff's complaint, and shown by the evidence in this case."

In appellant's prayer for instruction No. 12, as modified by the court, the court told the jury that Baker, when he entered the service of the defendant as a carpenter, and undertook to do the repairs he was engaged in doing at the time of his injury, impliedly agreed to assume all the obvious risks and dangers incident to the work then being done by him, including the risk of any injury he might receive from the kind of machinery then being used; that he assumed the risk of injury from the method of operating the crane that was open to his observation, provided, however, that he did not assume any risk arising out of the negligence of the appellant in the method of operating the crane under the circumstances.

The court, under proper instructions, left the jury to determine the question as to whether Vernon and Baker notified Waits that it was necessary for them to

go on the crane track, and of the time when they should be at that place to perform their work. If Waits was notified by Vernon and Baker that they were going upon the crane tracks to repair the window, and if Waits was notified of the time when they would be engaged in such work, as the jury has found, then it was the duty of Waits to have notified the crane operator of their presence upon the crane tracks. See *St. Louis, I. M. & S. Ry. Co.* v. *Harmon,* 85 Ark. 506; *St. Louis, I. M. & S. Ry. Co.* v. *Baker, supra.*

Appellant objected to the refusal of the court to give its prayer for instruction No. 2, which told the jury if deceased went upon the crane track of the defendant, and it was obviously dangerous for him to do so, and he failed to notify the crane operator of his presence upon the track, then he was guilty of contributory negligence. This instruction ignores the contention of the appellee that it was the duty of Waits, under the evidence, to notify the crane operator of the presence of Baker upon the crane track. The appellant's theory as to the contributory negligence of Baker was sufficiently covered in other instructions given by the court, and it was not error to refuse its prayer for instruction No. 2.

It was not error for the court to instruct the jury to consider the absence or presence of gongs or bells in determining the question of whether Baker was guilty of contributory negligence. There was testimony in the case, properly admitted, which warranted the jury in taking into consideration these matters in determining the issue of contributory negligence.

The court, on the whole case, correctly submitted the issues of negligence, contributory negligence and assumed risk. These, under the evidence, were questions for the jury.

Objection is made to certain remarks of attorneys for appellee made in their arguments to the jury. We have examined these carefully, and we are of the opinion that when taken in connection with the instructions of the court not to consider any remarks in the argument

that were not borne out by the testimony in the record, there was no reversible error. The court told the jury to divest their minds of everything not connected with the case, as shown by the evidence, and that they would consider no remarks of counsel not borne out by evidence.

Finding no error, the judgment will be affirmed.