EDWARD WHEAT, and others, trading as WHEAT, SCOTT, & McGEE, *vs.* LEMUEL CROSS.

*Sale of Personal Property—Withdrawal of Offer, after its Acceptance—Mistake of Fact—Rule of Caveat Emptor—Practice in the Appellate Court.*

On the 23d of August, 1867, the appellants, who were engaged in the business of buying and selling horses in Baltimore, received into their possession, to be sold on commission, a horse belonging to the appellee, who resided in Frostburg. The horse, at that time, was apparently sound and in good condition. On the 12th of September, 1867, the appellants addressed a letter to the appellee, stating that the horse had been sick, but was doing well at that time, and offering $140 for her, clear of all expenses, and adding *"you can draw on us at sight for* $140." This letter was received on the 15th or 16th of September. On the 16th, the appellee signified his acceptance of the offer by drawing on the appellants for $140.' The draft was sent on that day, and on the 17th, the appellants refusing to pay the draft, it was protested. On the 16th of September, the appellants addressed a letter to the appellee, stating that when they wrote, they did not think the horse was so bad, but since it had turned out to be "farcy," and they would not buy her at any price; and directing him not to draw on them for the money, as they would not pay the money until they saw how the mare got. This letter was not received by the appellee till after he had accepted the offer contained in the letter of the 12th, by sending the draft. On an action brought by the vendor to recover the price of the horse, HELD:

1st. That until the notice of withdrawal actually reached the vendor, the offer was continuing, and the acceptance thereof by him completed the bargain.

2d. That the vendees could not maintain the objection that they made the offer under a mistake of fact, and were therefore not bound by it.

3d. That in a case where there is a mutual mistake of the parties, as to the subject-matter of the contract, or the price, or terms, going to show the want of a *consensus ad idem*, without which no contract can arise, such a defence may be made; but not where the mistake is in relation to a fact wholly collateral, and not affecting the essence of the contract itself.

4th. That the vendees cannot escape from the obligation of their contract, because they have been mistaken or disappointed in the quality of the article purchased.

5th. That in the absence of a warranty, the rule *caveat emptor* applies, and the buyer takes the risk of quality upon himself.

6th. That the offer of the 12th of September was not according to its legal construction, a conditional offer which might be withdrawn at any time.

Where a prayer is granted erroneously, at the instance of the appellants, and enures to their advantage, they cannot ask a reversal on account of any error therein.

APPEAL from the Court of Common Pleas.

This appeal was taken by the defendants below, from a judgment rendered in favor of the appellee, in an action brought by him to recover the price of a horse, sold by him to the defendants.

The facts of the case are fully stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BRENT, GRASON and ROBINSON, J.

*Wm. H. Cowan,* for the appellants.

The prayer of the appellee excluded from the consideration of the jury the question of mistake on the part of the appellants in making the offer, which is the basis of the action. The gist of the inquiry is, did the appellants make an offer under a positively wrong impression? They say yea; and they are not bound by it. *Benj. on Sales,* 36, 37, *and* 39; *Thornton vs. Kempster,* 5 *Taunt.,* 786; *Story on Sales, sec.* 157; *Keele vs. Wheeler,* 7 *Man. & G.,* 665; *Leger vs. Bonaffé,* 2 *Barb.,* 475; *Allen vs. Hammond,* 11 *Peters,* 70, *&c.; Varnum & Aspinwall vs. Thruston,* 17 *Md.,* 470; *McNulty vs. Cooper,* 3 *G. & J.,* 217–8.

There was not the *consensus ad idem* essential to the making of a contract. *Benj. on Sales*, 39; *Story on Sales*, sec. 157; *Nash vs. Towne*, 5 *Wallace*, 699; *Davies vs. Watson*, 2 *Nev. & Man.*, 709; *Dickins vs. Jones*, 6 *Yerg.*, 483.

The granting of the appellee's prayer, and the granting of the second prayer of the appellants, was calculated to confuse and mislead the jury, and there was undoubted error in granting both of them. *Balt. & Ohio R. R. Co. vs. Blocher*, 27 *Md.*, 277; *Adams vs. Capron, et al.*, 21 *Md.*, 186; *Haney vs. Marshall*, 9 *Md.*, 215.

*Albert Ritchie*, for the appellee.

The only question in the case is, when is a contract by letter complete?

An offer by letter is a continuing offer until it be received. Its acceptance, then, completes the *aggregatio mentium*. Such an offer, of course, may be withdrawn, and the withdrawal takes effect as soon as notice of it *reaches the other party*, but not before. If the offer has been accepted in the *interim*, the withdrawal comes too late; nor does it matter that the withdrawal may have been sent before the other party, in point of fact, had accepted; it must *reach him* before acceptance.

*Tayloe vs. Merch. F. Ins. Co.*, 9 *How. U. S.*, 390, 400; *Adams vs. Lindsall*, 1 *B. & Ald.*, 681; *Mactier's Adm'rs vs. Frith*, 6 *Wend.*, 103; *Hamilton vs. Lycoming M. Ins. Co.*, 5 *Penn.*, 339; *Vassar vs. Camp*, 14 *Barb.*, 341; *Clark vs. Dales*, 20 *Barb.*, 42; 1 *Pars. on Conts.*, 483; *Benj. on Sales*, 33 *and* 50.

BARTOL, C. J., delivered the opinion of the Court.

This suit was brought by the appellee to recover the price of a horse sold to the appellants.

The plaintiff resided in Frostburg, and the defendants were engaged in the business of buying and selling horses

in Baltimore. The contract of sale was made by corre- — spondence between the parties through the mails.

The facts of the case, so far as it is material to state them, were as follows: On the 23d of August, 1867, the defendants received the horse into their possession, to be sold on commission, at that time apparently sound and in good condition. On the 12th of September, 1867, they addressed a letter to the plaintiff, stating that the horse had been sick, but is doing well at this time, and offering $140 for him clear of all expenses, and saying, "*you can draw on us at sight for* $140." This letter was received on the 15th or 16th of September; on the 16th the plaintiff signified his acceptance of the offer by drawing on the defendants for $140. The draft was sent on that day, and on the 17th the defendants refusing to pay the draft, it was protested.

On the 16th of September, the defendants addressed a letter to the plaintiff withdrawing their offer of the 12th, stating that "when they wrote they did not think the horse was so bad, but since it has turned out to be '*farcy*,' they would not buy at any price," and directing him "not draw on them for the money, that they will not pay the draft until they see how the horse gets." This letter was not received by the plaintiff till after he had accepted the offer contained in the letter of the 12th, by sending the draft.

In the argument of the case two positions have been taken by the defence—

1st. That there was not such mutual assent between the parties as to constitute a binding contract.

2d. That the offer by the defendants was made through mistake of a material fact as to the condition of the horse, and the nature of the disease under which it was suffering; and was withdrawn as soon as the mistake was discovered, and the acceptance thereof was not binding upon them.

Wheat, *et al. vs.* Cross.

1st. On the first question, we consider the law well settled that where parties are at a distance from each other, and treat by correspondence through the post, an offer made by one is a continuing offer until it is received, and its acceptance then completes the *aggregatio mentium* necessary to make a binding bargain. The bargain is complete as soon as the letter is sent containing notice of acceptance. This rule applies where the offer and acceptance are unconditional.

The offer may be withdrawn, and the withdrawal thereof is effectual so soon as the notice thereof reaches the other party; but if before that time the offer is accepted, the party making the offer is bound, and the withdrawal thereafter is too late.

In this case it appears the defendants' letter of withdrawal was sent on the same day on which the notice of the plaintiff's acceptance of their previous offer was transmitted, and it has been argued that the *onus* is on the plaintiff to show that the sending of the acceptance preceded the sending of the letter of withdrawal. This position is not correct; it is quite immaterial to inquire whether the defendants' letter of the 16th, or the draft of the same date, was first sent.

Until the notice of the withdrawal of the offer actually reached the plaintiff, the offer was continuing, and the acceptance thereof completed the contract.

This point was expressly decided in *Tayloe vs. Merchants' Fire Ins. Co.*, 9 *Howard*, 390. That was a case arising upon an insurance contract, but the reasoning of the Court on this question, and the principles decided, are applicable alike to all contracts made by correspondence between parties at a distance from each other. There the terms upon which the company was willing to insure were made known by letter, and it was held "that the contract was complete when the insured placed a letter in the post-office accepting the terms."

The Court say, page 400, "We are of opinion that an offer under the circumstances stated, prescribing the terms of insurance, is intended and is to be deemed a valid undertaking on the part of the company that they will be bound according to the terms tendered, if an answer is transmitted in due course of mail accepting them; *and that it cannot be withdrawn unless the withdrawal* reaches the party *to whom it is addressed, before his letter of reply announcing the acceptance has been transmitted.*"

We refer to the able opinion of Mr. Justice Nelson in the case just cited, without attempting to repeat the reasoning upon which it rests.

The rule we have stated as governing the present case, is supported by many adjudged cases, some of which are cited in the appellee's brief. Of these we refer to *Adams vs. Lindsall,* 1 *B. & Ald.,* 681 ; *Mactier's Admrs. vs. Frith,* 6 *Wend.,* 103. See also *Dunlop vs. Higgins,* 1 *Hof. L. Cases,* 381.

2d. The second ground of defence which was chiefly relied on in the argument, that the defendants made the offer under a mistake of fact as to the actual condition of the horse, and were therefore not bound by it, is, in our judgment, altogether untenable. Such an error or mistake as that, in no manner affects the validity of the contract. In a case where there is a mutual mistake of the parties as to the subject-matter of the contract, or the price or terms, going to show the want of a *consensus ad idem,* without which no contract can arise, such a defence may be made.

But here the mistake of the defendants was in relation to a fact wholly collateral, and not affecting the essence of the contract itself. The vendees cannot escape from the obligation of their contract because they have been mistaken or disappointed in the quality of the article purchased. In the absence of a warranty the principle of

Wheat, *et al. vs.* Cross.

*caveat emptor* applies, and the buyer takes the risk of quality upon himself.

In support of so familiar a principle no authority need be cited.

Having disposed of the general propositions involved in this case, we proceed briefly to notice the ruling of the Court below upon the prayers.

From what has been said it follows that there was no error in granting the appellee's prayer, of which the appellant has any good cause to complain.

It stated the law on the subject of the attempted withdrawal of the offer by the appellants less favorably for the appellee than he was entitled to ask. There is no error in granting that prayer for which the appellants can claim a reversal. Nor do we discover any error in the rejection of the appellants' 1st, 3d, 4th, 5th and 6th prayers.

The 1st and 4th were based on the theory that the appellants were relieved from liability on the contract by reason of their mistake with regard to the condition of the horse, and were consequently erroneous and properly refused.

The 5th and 6th prayers deny the existence of the contract of sale, on the ground that the offer was withdrawn before acceptance ; contrary to what we have seen was the legal effect of the correspondence between the parties.

The offer of the 12th of September was not, according to its legal construction, a conditional offer which might be withdrawn at any time, and therefore the 3d prayer was properly refused.

The 2d prayer of the defendants was granted, we think erroneously, because there was no evidence of a conditional offer, but it was granted at the instance of the appellants and enured to their advantage ; they cannot, therefore, ask a reversal on account of any error therein. No exception was taken to the action of the Court below

in granting this prayer; nor do we perceive in what manner the appellants were injured thereby.

*Judgment affirmed.*

(Decided 24th June, 1869.)