ANDREWS *v.* TAMARACK MINING CO.

1. MASTER AND SERVANT—MINES AND MINING—SAFE PLACE.
   Decedent was employed in defendant's mine as a "hitch cutter," making holes to receive timbers set in them to support the wall or overhanging rock. While the men were engaged in the usual work of timbering the roof of a stope in the mine, and making it safe for the miners, part of the rock fell and rolled upon decedent, killing him. It appeared that all the loose rock had been barred down and the place declared safe, everybody there considering it so: and that plaintiff and his coworker had observed the progress of the work and proceeded to cut the hitches as was usual, believing it safe. The miners had been cautioned against working in dangerous places and were at liberty to withdraw or to take all necessary precautions to render the stope safe. *Held*, that the defendant was not charged with the obligation of furnishing decedent with a safe place in which to work so as to make defendant liable for his death.[1]

2. SAME—DANGEROUS PLACE—NEGLIGENCE.
   On a previous trial of the case the superintendent had testified that the overhanging wall often broke and fell when it appeared to be safe, and in the space of a few minutes. The testimony of the witness who had died was not introduced on the second trial. *Held*, that without evidence to support this contention the case should have been taken from the jury and a verdict directed for defendant.

Error to Houghton; Cooper, J. Submitted November 13, 1913. (Docket No. 104.) Decided March 28, 1914.

Case by Grace E. Andrews, as administratrix of the estate of Nicholas J. Andrews, deceased, against the Tamarack Mining Company for the unlawful kill-

[1] The question of the applicability of the rule as to safe place where servants are engaged in the work of removing dangerous conditions is discussed in a note in 25 L. R. A. (N. S.) 321.

ing of plaintiff's intestate. Judgment for plaintiff. Defendant brings error. Reversed; new trial denied.

*Allen F. Rees,* for appellant.

*A. W. Kerr (A. T. Streeter,* of counsel), for appellee.

McALVAY, C. J. Plaintiff, as representative of her deceased husband, recovered the present judgment in this case against defendant for injuries resulting in his death, charged to have been caused by the negligence of defendant.

This case was first before this court in the April term, 1897, where a former judgment in favor of plaintiff was reversed by a majority opinion and a new trial ordered. No further prosecution of the case was had until October, 1912, when a second trial occurred, which resulted in the judgment now before this court for review.

For an extended statement of facts in the case, reference is had to the opinions in *Andrews* v. *Mining Co.,* 114 Mich. 375 (72 N. W. 242). In the present opinion only such facts as are sufficient to an intelligent understanding of the case need be stated.

Plaintiff's decedent was a miner of 20 years' experience. He had worked in Michigan copper and iron mines for several years, and had previously worked in defendant's mine for about one year. At the time of the accident, he had for a second period worked in this mine for several weeks. He was a man of more than ordinary intelligence, and in mining, which had been his life work, he was an expert, and had at times held positions of trust, having been at one time a captain. At the time of the accident he was working as a "hitch cutter" with a man named Trevarrow. "Hitch cutters" work in pairs, cutting holes, called "hitches," in the rock of the foot wall of the "stope," or tunnel, of the mine. One of the

pair holds the cutting tool, and the other strikes with a sledge. These holes receive the lower ends of pieces of timber which are set upright in sets of three, called batteries, and are driven in tight against the top, or hanging wall, of the stope to prevent rock from falling down. These sets of timbers are put in about seven or eight feet apart as the drilling and mining of the "stope" advances. The "stope" rises at an angle towards the level above as it is mined out. In this "stope" the vein of ore, which was perfectly hard and safe to work in, required drilling and blasting. It was first mined out on the lower half of the vein near the foot wall, and then the upper half up to the hanging wall, so that in mining the stope was usually driven in further on the foot wall than overhead. The rock above the vein of ore was brittle, which necessitated that it be timbered in the manner described, and this mining was known and understood to be more than usually dangerous. The work of the "hitch cutters" and putting in the timbering into the "stope" advanced as the ore was mined out, exposing the rock roof, and they were continually making the place safe. It was their duty to examine and see that everything was safe before going to work, and, if the "hitch cutters" examined and found it was not safe for them to work, they should take time to make it safe and have men, if they needed them, to help make it safe. This "stope" was on the sixteenth level, and had been worked in about 60 feet along the course of the level and up near enough to the fifteenth level to cut a hole through for purposes of ventilation.

On the morning of the accident, the two miners had for about two hours been at work in this place, using their bars on the hanging wall, or roof, breaking down the "loose" and testing it for safety. Then came four or five timbermen, and also the "hitch cutters." These timbermen set up the timbers and **drive** them into

place after the "hitch cutters" have cut the "hitches." On this occasion they also, with the two miners, continued for an hour or more after they came there to work at the rock above, including that which later fell, and broke down all that was loose or which they could break down. The hanging wall was then pronounced safe, and the testimony of all the witnesses is that everybody considered it safe.

During the time the miners and timbermen were at work with their bars, they had sufficient lights, and during this time Andrews and Trevarrow were present, standing or sitting behind the men who were doing this work, observing all that was done. When they finished, the timbermen pronounced the place safe and went to work. The miners also began to set up their machine to proceed with the drilling. The testimony of Trevarrow is that he and his partner, Andrews, were fully convinced that the place was safe to go to work in, and the head timberman told the "hitch cutters" that they could go to work, everything was safe. They at once began cutting "hitches," and had worked about one hour, when suddenly a large piece of rock fell down and, rolling, crushed Andrews and injured Trevarrow.

The main contention of defendant is that, under the evidence in the case, a verdict should have been directed in its behalf, for the reason that there was no evidence of defendant's negligence with respect to plaintiff's decedent; and that there was a clear and absolute assumption of risk by plaintiff's decedent. Errors are also assigned upon the admission of certain testimony, and upon some portions of the charge.

When the case was first before this court, it was reversed only on account of the improper admission of certain testimony, given at the inquest, of the mining captain, Maslin, who had charge of the underground work of this mine, introduced, not for the

purpose of impeachment, but to prove the substantive fact that defendant, through its agent (the captain), had knowledge of the danger and should have warned plaintiff's decedent. The majority opinion, Mr. Justice LONG speaking for the court, probably for the purposes of a new trial, although it is not so stated, in considering one of the contentions made by plaintiff's counsel, reads:

"But counsel for plaintiff contend that the place was made dangerous by the excavation's being worked too far under, and left too long a time, without putting in the sets of stull timbers, as was usual; that this was done under the direction of Capt. Maslin, who knew that if too great excavation was made, and the timbers not at once placed, the hanging walls, being left exposed, would crumble or break off and fall; that he, knowing this, sent the men in without warning them of the dangerous condition. We think there is some evidence to sustain this contention. Mr. Parnall, the superintendent of the mine, testified that ofttimes, when the overhanging wall appeared safe, it would suddenly break off and fall, and this within the space of a few minutes. * * * While the evidence is not very clear upon this question, we are not able to say that there is no evidence of that fact." Andrews v. Mining Co., 114 Mich., at page 381 (72 N. W. 244).

This conclusion of the court was based entirely upon the testimony of the captain and the superintendent of the mine, who have both died since the former trial, and whose testimony, then taken, was not introduced by either party upon the last trial. Appellant alleges that the case now before the court for consideration is therefore an essentially different one from that which was passed upon on the former hearing, and that, in view of the evidence in this record and the undisputed duties of plaintiff's decedent which he was employed to perform, there is no evidence in this case of defendant's negligence. We have already briefly stated these duties in this opinion and

find, upon an examination of both opinions handed down on the former hearing, that the entire court agreed as to these duties of plaintiff's decedent.

Quoting again from the majority opinion, we find as follows:

"Under the method adopted by the defendant company, these hitch cutters were required in all cases to examine all places where they might go to work, and see and satisfy themselves that such places were safe, before beginning their work, and they were frequently cautioned and warned as to this duty, and that they must never, under any circumstances, work under overhanging ground without first examining it, and being satisfied that it was all right, and, if found dangerous, to make or have it made safe; and they were allowed to take all the time and have all the assistance necessary for that purpose, and they understood and knew that no one would go ahead of them for that purpose, but that that was one of their particular duties." 114 Mich., at page 382 (72 N. W. 245).

From the minority opinion, Mr. Justice GRANT speaking, we quote:

"The situation, in brief, is this: These men were authorized and were expected to judge for themselves as to the safety of the place. They were competent to do so. They had been cautioned against working in dangerous places. They placed no reliance upon the judgment of any other employee, officer, or man, but used their own judgment. They were at liberty to withdraw if they considered the place dangerous. * * * The master in this case had furnished the proper tools and appliances, competent and experienced men, and had instructed them to exercise their own judgment as to the safety of the place, and had authorized them, if in their judgment the place was unsafe, not to go to work, but to take the necessary steps to render the place safe." 114 Mich., at pages 383, 384 (72 N. W. 245).

The sole ground of negligence relied upon in plaintiff's declaration is that it did not perform its duty

in furnishing a safe place for the plaintiff's decedent to perform his work.

The first question which arises is whether the doctrine of a safe place, as invoked, is applicable to this case. Under the undisputed evidence in this case, as far as performing his work was concerned, plaintiff's decedent was engaged in making a safe place, and it is self-evident that it would be an impossibility for the defendant to cause the timbering in this stope to be done in advance for the protection of the men who themselves were specially employed to put in the timbering. The dangers were only those necessarily incident to the employment, changing from hour to hour, as the work progressed, and it is apparent that, by reason of the character of the work and the dangers attending it, miners of extraordinary skill and experience were selected, invested with power and authority to determine for themselves the safety of the place before going to work. This court has held that under circumstances of this character the doctrine of safe place does not apply. *Petaja* v. *Mining Co.*, 106 Mich. 463 (64 N. W. 335, 66 N. W. 951, 32 L. R. A. 435, 58 Am. St. Rep. 505).

The undisputed testimony of all the witnesses would indicate that for several hours, in the presence of the hitch cutters, these experienced miners and timbermen worked upon this hanging wall with bars, testing and prying down, until everybody was satisfied that the place was safe, including plaintiff's decedent, who, with his partner, was chief in authority at that work. In the absence of the testimony of the mining superintendent and captain, upon which the opinion of a majority of this court indicated that there was slight evidence of negligence on the part of defendant, it is not necessary to discuss that feature of the case. We are satisfied that there was no evidence in the case of negligence on the part of defendant,

and the court was in error in refusing defendant's motion for an instructed verdict. This conclusion makes it unnecessary to consider the question of assumption of risk by plaintiff's decedent, or any of the other questions which have been presented by appellant, and are discussed in the briefs.

The judgment of the circuit court is therefore reversed, and, it being obvious that no other or different case can be presented, no new trial will be granted.

BROOKE, KUHN, STONE, BIRD, and STEERE, JJ., concurred. OSTRANDER and MOORE, JJ., did not sit.