## DRAJICEVIC v. CHAMPION COPPER CO.

MASTER AND SERVANT—PERSONAL INJURIES—ASSUMPTION OF RISK.
Where plaintiff, an experienced timberman, was injured by falling rock while engaged in repairing a mine shaft compartment to make it safer for defendant's miners who had occasion to use it, plaintiff was not entitled to recover under the doctrines of safe place, fellow servant, and assumed risk[1] *Andrews* v. *Mining Co.*, 180 Mich. 72.

Error to Houghton; O'Brien, J. Submitted October 18, 1916. (Docket No. 135.) Decided December 22, 1916.

[1]On the question of servant's assumption of risk from changing condition of the working place during progress of work, see notes in 19 L. R. A. (N. S.) 340; 25 L. R. A. (N. S.) 321; 28 L. R. A. (N. S.) 1267.

Case by John Drajicevic against the Champion Copper Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed, and no new trial ordered.

*Stone & Weider*, for appellant.

MOORE, J. This is an action by the plaintiff to recover damages for personal injuries received by him August 5, 1911. The case was tried in October, 1912, before a jury. From a verdict and judgment in favor of the plaintiff, the case is brought here by writ of error.

The case was submitted to this court October 18, 1916. The attorneys for the appellee were given 15 days in which to file a brief. No brief for the appellee has been filed, and we are advised none will be. The attorneys for the appellant contend a verdict should have been directed in their behalf for the following reasons:

(1) The plaintiff's injuries resulted from a risk assumed by him in his employment.

(2) The doctrine of safe place does not apply.

(3) The negligence of plaintiff's fellow servants was the proximate cause of his injury.

(4) The cause of the accident is left in conjecture by the declaration and proofs.

In the defendant's mine there was a shaft with three compartments, two hoisting compartments side by side, and at the south end of the shaft a ladder road or way was partitioned off by means of timbers running at intervals of six or eight feet, on which timbers planks were spiked. In the ladderway there was a continuous ladder on the foot wall side. Where this ladder passes each level, there is a platform, which is kept closed. To pass through this platform, a man has to shove a sliding door, making an aperture large enough for a miner to pass through. Between the levels there are

intermediate platforms, called "sollars." Between the eighth and ninth levels, where the accident happened, there were three sollars. The ladderway in this shaft was 7 feet from foot wall to hanging wall and 5 feet wide. The purpose of the sollars is to stop anything falling through the ladderway, or to catch a man's body. If a man should fall through the ladder road, he could not fall more than 20 or 30 feet. These sollars were being repaired, using concrete. To continue the work of concreting above the point where it had been left off (5 or 6 feet above the first sollar above the ninth level), it was necessary to rig a bucket in the ladderway to carry the stuff for concreting up and down. This bucket was to run upon a cable or trolley. For this purpose the lagging, some days before, had been taken down in the shaft between the eighth and ninth levels. The plaintiff helped take it down, and all working in the shaft knew that a cable was to be put in.

We may now quote from the testimony of the plaintiff:

"The second time I come back to America was five years ago. I worked in one of the shafts of the Champion Copper Company, the defendant, on the 5th day of August, 1911. I was working in the B shaft on the ninth level. I think the ninth level is about 900 feet from the surface. When I was hurt, I was working as a timberman. At that time I was working at the south end of the shaft on the ladder way. There are two skipways in that shaft, the north and south.

"*Mr. Kerr:* Is it conceded this shaft goes down about at an angle of 70 degrees?

"*Mr. Rees:* Yes.

"This ladderway is about 5 feet wide. It is about 7 feet high from the foot wall to the hanging wall in the ladderway. It is between 25 and 30 feet above the ninth level in the ladderway where I was working at the time I was injured. At the time I was hurt we were making a stage. We call it ladder stage where we climb a ladder. I think a stage is put there, if a

man falls down the ladder, it stops him. He falls on the stage. At that time we were also putting concrete in above. Below the eighth level there was no timbering done in this ladderway.

"Q. Had there been timber there before?

"A. There was, but it was taken off. At the time I was hurt, I had just brought a plank up from the lower stage. I was then standing right by the ladderway and turned towards the hanging. The rock came from above, and struck me on the head, and I fell down, and the others picked me up.

"Q. I want to ask you, Mr. Drajicevic, whether at that time, just before you were struck, you knew of the fact that other men were working in the ladderway above you?

"A. I don't know there was. I went to work in this way that morning between 7 and 8 o'clock. That's where I began in the morning. In that particular ladderway we were working from morning till about noon. Before that day I had been working in that ladderway there four years. I had been working as a timberman in the ladderway before I was hurt almost four years. I had worked, before the day I was hurt, about two months in that shaft."

One of the witnesses, whose testimony is uncontradicted, testified in part as follows:

"The purpose of the sollar is to stop anything falling through the ladderway, or catch a man's body. If he should fall through the ladder road, he couldn't fall more than 20 or 30 feet. The arrangement with relation to the ladderway or the rest of the situation between the eighth and ninth levels of B shaft at the time of the accident was substantially the same as I have just described. The only difference is that part of the shaft had been completed some eight or nine years previously, and of course some of the timber had decayed, and the rock at the ends of the shaft was somewhat weathered, and it became loose in places, and as it was continually doing it, this particular party started to repair that particular level, through the eighth to the ninth. By this particular party, I mean the men who were working at the time of this accident, at both the eighth and ninth. That was the job

in progress, to simply renew what timbers were necessary to renew in the shaft, and repair the weakened underpart of the shaft. It was concreted; but, instead of putting in a continuous lining, a layer of concrete was used, which is supposed, of course, to be more permanent and make a better job than the timber. The object of that work was to prevent any loose falling into the ladder road, and to that end simply to make the ladder road safer and a better highway."

We have quoted enough of the testimony to show that plaintiff, who was 32 years of age and an experienced timberman, was engaged in repairing that part of the compartment, which because of age was in need of repair, so as to make it a safer place for the miners who had occasion to use the ladderway. The doctrines of safe place, of fellow servants, and of assumed risk have so recently had the consideration of this court that we shall not attempt to restate them. The cases of *Andrews* v. *Mining Co.,* 180 Mich. 72 (146 N. W. 394), *Juntunen* v. *Mining Co.,* 184 Mich. 341 (151 N. W. 571), and *Kangas* v. *Iron Co.,* 188 Mich. 255 (154 N. W. 41), are controlling of the instant case. A verdict should have been directed for defendant.

The judgment is reversed, with costs to defendant. No new trial will be awarded herein.

KUHN, OSTRANDER, BIRD, STEERE, and BROOKE, JJ., concurred. STONE, C. J., and PERSON, J., did not sit.