JOHN R. CLEMENTS, ADMINISTRATOR OF CLINTON CLEMENTS v.<br>ELIZABETH CITY LIGHT AND POWER COMPANY.

(Filed 17 September, 1919.)

1. **Employer and Employee—Master and Servant—Electricity—Dangerous Instrumentalities—Appliances—Duty of Master—Delegation of Duty—Contracts.**

    An employer may not contract with his employee to do dangerous work, such as lineman for an electrical power plant, the latter to furnish his own tools and appliances, and thus avoid his duty to furnish his employee with proper ones for the purpose, such being in effect to permit him to contract against his own negligence.

2. **Employer and Employee—Master and Servant—Contributory Negligence—Assumption of Risks—Electricity—Evidence—Verdict.**

    Where upon issues of contributory negligence and assumption of risks, in an action to recover of the intestate's employer for his alleged killing

CLEMENTS *v.* POWER CO.

while engaged in his duties as a lineman for an electric power plant, there is evidence tending to show that the intestate was a lineman of long experience and was killed while replacing a cross-arm in his own way near the top of a pole, preferably using his own leather gloves, considered unsafe for the purpose, while rubber gloves were considered safe; and knowing the danger, permitted two wires, highly charged, to come in close proximity with each other, which he could have readily avoided by another and available method, and the shock that caused his death was through the hand, with the leather gloves on, being in contact with one of these wires: *Held*, sufficient to sustain an adverse verdict to the plaintiff, and under a charge free from error the verdict will be sustained on appeal.

3. **Evidence—Master and Servant—Employer and Employee—Contributory Negligence—Assumption of Risks.**

In an action to recover damages of an electric power plant for the negligent killing of a lineman employed by it, and there are issues properly submitted on the questions of contributory negligence in his using his own leather gloves instead of rubber gloves, in catching hold of a heavily charged wire by reason of its proximity to another such wire, which he should have kept apart; and also, upon the issue of assumption of risks, testimony by an expert witness is competent which tends to show he had previously warned the deceased of the danger, and that he had used an improper glove of his own selection.

4. **Appeal and Error—Issues—Evidence—Harmless Error.**

Evidence bearing upon one issue in the case on appeal, when the case is conclusive upon the answer to another one, is immaterial, and its admission, if improper, is not reversible error.

APPEAL by plaintiff from *Devin, J.,* at January Term, 1919, of PAS-QUOTANK.

This is an action to recover damages for the wrongful death of the plaintiff's intestate, caused, as the plaintiff alleges, by the negligence of the defendant, in that it failed to furnish the intestate reasonably safe tools and appliances with which to do his work, to wit, rubber gloves. 2. That it failed to furnish sufficient help for the work that was being done.

The evidence tended to prove that the plaintiff's intestate was an experienced lineman and had been engaged in that work for several years; that at the time he was employed by the defendant, some two or three weeks before his death, it was the understanding between him and the superintendent of the defendant that he was to furnish all his equipment, including gloves; that at the time of his death he was engaged in removing from one of the company's poles a "dead arm," by which is meant a rotten arm, and replacing it with a new one; that he had been sent to do this work by the general manager of the defendant; that after taking the rotten arm from the pole and either lowering it or throwing it down he unloosed his safety belt and started down the

pole, and as he passed through the wires his hand, on which were leather gloves, came in contact with one of the wires charged with 2,300 volts; that he was then seen to throw back his head, hang for an instant while fire flashed from his hands, and then fall; and that he was killed; that the insulation on the wires where the intestate was working were badly worn; that they had been permitted to remain in this condition for a long time; that an arm cannot be removed and replaced by one man.

It was also in evidence for the defendant that the intestate was employed to do extra work and not regularly; that at the time of his employment he stated that he had all the necessary appliances for his work—tools, climbers, gloves, etc.—and that he preferred to work with his own tools; that at the place where he was killed there was a high-power wire of opposite polarity on each side of the pole; that at this point the wires crossed the street on an angle which caused one of the wires when removed from the arm to rest against the pole and caused the other to swing off unless tied to the pole before removing from the arm; that the intestate removed both wires and allowed one to rest against the pole, and instead of tying the other lifted it over the top of the pole and allowed it to rest close to the other wires; that in doing this he came in contact with both wires, and not having his safety belt fastened and having on leather gloves he was shocked by the voltage of the wires and was thrown to the ground, crushing his skull and causing his death.

Upon the trial, one Bains, a witness for the defendant, was permitted to testify, over the objection of the plaintiff, that he told the intestate not long before his death that he had better be careful that the current he was then working on would kill him and that the intestate replied that this current wouldn't hurt him, that he was not afraid of it, that he could bite it in two, that he had been working on wires in Norfolk carrying 11,000 volts. Also that the intestate used leather gloves nearly all the time and that they were worthless as a protection from shock.

The plaintiff excepted to the admission of this evidence.

One Lewis, a witness for the defendant, who was an expert, was permitted to testify, over the objection of the plaintiff, that there was no occasion for another man to help the plaintiff, and the plaintiff excepted.

At the conclusion of the evidence the plaintiff asked the court to charge the jury that even if the intestate contracted to furnish his own gloves that this would not release the defendant of its duty to furnish reasonably safe appliances, which was refused, and the plaintiff excepted.

His Honor charged the jury fully as to the duty to furnish the plaintiff a reasonably safe place in which to do his work and reasonably safe

tools and appliances, and among other things as follows: "But if you find from the evidence that the plaintiff's intestate undertook to provide his own gloves and that he was injured by reason of their being defective gloves, there would be no liability resting upon the defendant, he was injured by reason of these being defective gloves; if the defendant did not furnish them and intestate used his own gloves defendant could not be held responsible for their condition." And again: "Now, upon the other hand, the defendant contends you ought to answer the first issue 'No,' that there was no negligence on the part of the defendant, or if you answer the first issue 'Yes' you should answer the second and the third issue 'Yes,' or one or more of them; that as a matter of fact that the man's death was not attributed to the fault of this defendant but entirely to his own act and deed; that he furnished his own tools, not only his own gloves but spurs and belt and pliers and other instruments which are used by a lineman; that they never furnished him any gloves; he furnished his own gloves. That they had an agreement between them, whether that would be binding in some respects or not, that they were not responsible for the condition of the gloves, and they invoke that principle of law and contend that you should observe that they are not liable on account of defective gloves."

The jury returned the following verdict:

1. Was plaintiff's intestate killed by the negligence of the defendant, as alleged in the complaint? Answer: "No."

2. Did plaintiff's intestate, by his own negligence, contribute to his own injury and death, as alleged in the answer? Answer: "Yes."

3. Did plaintiff's intestate assume the risk of injury and death, as alleged in the answer? A. "Yes."

4. What damage, if any, is plaintiff entitled to recover? Answer:——

Judgment was entered upon the verdict in favor of the defendant, and the plaintiff excepted and appealed.

*Ehringhaus & Small attorneys for plaintiff.*
*Hughes, Little & Seawell and W. A. Worth attorneys for defendant.*

ALLEN, J. The rule is well established that the duty imposed upon the employer to provide a reasonably safe place to work and reasonably safe tools and appliances is nondelegable (*Mincey v. R. R.,* 161 N. C., 470), and so important and necessary do we regard this principle that we would not permit it to be modified or weakened by contract between the employer and employee requiring the employee to furnish his own tools and appliances.

Indeed, if this should be allowed the rule could be easily abrogated, and the employer would be afforded the opportunity to contract against his own negligence.

We would therefore be inclined to grant a new trial if the verdict stopped with the first issue, but the jury has gone further and has answered the issues of contributory negligence and assumption of risk against the plaintiff, and in the consideration of these last issues it was proper to have before the jury all the facts and circumstances including the use of leather gloves, and upon the second and third issues the use by the plaintiff of the leather gloves belonging to him was given no effect except as a circumstance tending to establish the defendant's contention on the issues of contributory negligence and assumption of risk.

In *Hicks v. Cotton Mills,* 138 N. C., 320, and *Pressly v. Yarn Mills,* 138 N. C., 415, two leading authorities on the respective duties of employer and employee, after holding that the duty of the employer to furnish a reasonably safe place to work and reasonably safe tools and appliances is absolute, the Court says in the latter case: "On the second issue, that addressed to the question of contributory negligence, the judge charged the jury in substance that if they should find from the evidence that the injury would not have happened if the defendant had supplied the machine with a shifter, and this was the proximate cause of the injury, this would be continuing negligence and they should answer the second issue 'No,' though the plaintiff may have been negligent in the use of the machine. As we have held in *Hicks v. Cotton Mills, supra,* this is not a correct proposition as to every negligent failure on the part of the employer to furnish a safe appliance by reason of which the injury occurs, and is not the law in cases of the character we are now considering. The employee is not in such instances absolved from all obligation to act with reasonable care and prudence, and if there is negligence on his part, concurring as the proximate cause of the injury, the plaintiff cannot recover."

It has also been held that "When the danger is obvious and is of such a nature that it can be appreciated. and understood by the servant as well as by the master or by any one else, and when the servant has as good an opportunity as the master or any one else of seeing what the danger is, and is permitted to do his work in his own way and can avoid the danger by the exercise of reasonable care, the servant cannot recover against the master for the injuries received in consequence of the condition of things which constituted the danger. If the servant is injured, it is from his own want of care." *Covington v. Furniture Co.,* 138 N. C., 374; *Mace v. Mineral Co.,* 169 N. C., 146.

Applying these principles we find the evidence on the issue of contributory negligence full and almost uncontradicted, and as it has been submitted to the jury under instructions free from error, the finding thereon is sufficient to sustain the judgment.

The intestate of the plaintiff was a lineman of ten or twelve years experience. He knew the dangers of his employment and the tools and appliances he ought to use. He represented to the manager of the defendant at the time of his employment he had the tools and appliances necessary for his work and that he preferred to use his own. He discovered the need of repairs at the place where he was injured, and undertook to do the work in his own way and with tools selected by himself. He used leather instead of rubber gloves, and after he had detached the high-power wires on each side of the pole from the arm, instead of keeping them apart, which he could have done, thereby rendering them harmless so far as he was concerned, he placed them near each other, which was very dangerous, and thus brought about his death by his own want of care.

The statement in the former opinion as to the use of gloves furnished by himself, thus considered in connection with the other circumstances, which are now fully developed, is free from criticism when restricted to the second issue.

The evidence of Bains was competent to show special notice to the intestate of the danger of the work he was doing, and that he used a defective appliance of his own selection.

The evidence of Lewis is immaterial in the view we take of the appeal, as it has no bearing on the second issue.

No error.