JEANETTE BROTHERS COMPANY v. HOVEY & COMPANY ET AL., AND MARS HILL TRUST COMPANY, INTERVENER.

(Filed 4 October, 1922.)

1. **Contracts—Offer and Acceptance—Reasonable Time—Evidence—Questions for Jury—Trials.**

Where men of fair minds may come to differing conclusions on the question, the reasonableness of the time in which an offeree must accept a contract for the sale of goods is a question for the jury, when the parties have determined upon no specific time in which the acceptance must be made, but only that it be a reasonable one.

2. **Same—United States Mails.**

Where the seller of potatoes has made an offer of sale for future delivery to the proposed purchaser to be accepted within a reasonable time therefrom, by mail, the purchaser's letter of acceptance within a reasonable time, and mailed to the seller before receipt of the latter's letter of cancellation, completes the contract, and upon the seller's breach thereof the purchaser may recover his damages.

3. **Contracts—Offer and Acceptance—Breach—Damages.**

Where the seller has breached his contract of sale of potatoes, to have been delivered to the purchaser at a specified future time and place, the measure of damages is the difference between the contract price, and the market value of the potatoes at the time when and at the place where the goods should have been delivered by the terms of the contract.

4. **Same—Instructions—Verdict—Appeal and Error—Harmless Error.**

In this action, permitting a recovery by the defendant of damages for the plaintiff's (seller's) breach of contract in the delivery of potatoes, the jury having awarded as damages the difference between the contract price and the market value, etc., an instruction that allowed them to include the defendant's loss under contracts he had made with third parties, if erroneous, was harmless error.

5. **Contracts—Breach—Attachment—Intervener—Banks and Banking—Agency for Collection—Principal and Agent.**

Where the defendant pleads and relies on a counterclaim for damages alleged to have been caused by the plaintiff's breach of the contract he has sued on, and has attached here a draft of the plaintiff, a resident of another state: *Held*, a bank that has intervened, claiming the right to the proceeds of the draft, cannot maintain this position when the jury have found, under correct instructions upon sufficient evidence, that the intervening bank was only an agent for collection.

APPEAL by defendant from *Ferguson, J.,* at February Term, 1922, of PASQUOTANK.

Civil action for breach of contract of sale for seed potatoes. There was evidence tending to show that in November, 1919, W. H. Jeanette, a member of plaintiff firm of Elizabeth City, N. C., was at Resque Isle, Maine, and made a tentative agreement with defendants, resident and doing business at Mars Hill, Maine, for the purchase of 1,100 sacks of

seed potatoes at $5.60 per sack, and that the contract of sale was to be in writing, and $1 per sack paid thereon at time same was completed. The potatoes sold for delivery between 1 and 20 January, 1920. That pursuant to an arrangement between them over the telephone, defendants, or their agent, was to have contract at railroad station as plaintiff was on his return. That on 6 November the written contract was brought to station by defendant's agent, and it was then further agreed that W. H. Jeanette should take same home with him to Elizabeth City and examine and decide on the question of acceptance, notifying defendant within a reasonable time after his return, and also remit the prepayment of $1 per sack. There was also an offer on part of defendants that plaintiff should have option to purchase 400 additional sacks at the same price on given notice of acceptance as aforesaid. That W. H. Jeanette, who had been in Maine on his wedding trip, had contracted a severe cold and was very ill from its effects, making it necessary for him to remain in New York for six or seven days on his return journey, and he did not arrive at Elizabeth City till 12 or 15 November. That there was no increase of the price of potatoes of any significance during November, and plaintiff, considering that the matter was in no way urgent, did not communicate with defendants about the matter till 29 November, when he wrote and duly mailed a letter to defendants notifying them of the acceptance of the contract, and enclosing check for $1,100, the stipulated amount of the prepayment. It further appeared that on 14 November defendants had written plaintiffs, withdrawing the offer of the 400 additional sacks, and on 28 November defendants had mailed a letter at Mars Hill, addressed to plaintiffs at Elizabeth City, withdrawing the written offer of the 1,100 sacks, but this in the ordinary course of mail could not and did not reach Elizabeth City for three or four days, and was not received until after plaintiffs had mailed their letter of acceptance, enclosing the check.

Defendants' evidence was to the effect that at the time the written contract was delivered, plaintiff had told defendant's agent that he would probably reach Elizabeth City by the 11th, and only a reasonable time was to be allowed for acceptance. That there was no marked rise in the price of potatoes until 15 December, and after that there was a continued advance during the selling season. The evidence further showed that from 1 to 20 January, the period for delivery, the market value of potatoes was from seven to eight dollars per sack wholesale in carload lots, and plaintiff could have sold all of these at from $9 to $10.50 per sack in the course of his business.

An inspection of the record shows also that plaintiffs had sued out an attachment in the cause, and had same levied on a draft, and its proceeds in the hands of National Bank of Elizabeth City for $1,614.49,

said draft having been drawn by Hovey & Company on Spence and Hollowell in Elizabeth City, and sent to said bank for collection by the Mars Hill Trust Company, and it appeared further that on 30 October, 1920, said Mars Hill Trust Company was allowed to intervene and set up its claim to this draft and its proceeds. And on the trial offered evidence tending to show that it had purchased the draft for full value and was the bona fide owner of same. There were also facts in evidence permitting the inference that said trust company was not the owner in good faith, but that it had received and forwarded the draft merely as collecting agent for defendant.

On issues submitted, the jury rendered the following verdict:

"1. Did the plaintiff and the defendant enter into a contract relating to the purchase of potatoes, as alleged in the complaint? Answer: 'Yes.'

"2. Was the plaintiff ready, able, and willing to comply with said contract? Answer: 'Yes.'

"3. Did the defendant wrongfully refuse to comply with said contract? Answer: 'Yes.'

"4. What damages, if any, is the plaintiff entitled to recover? Answer: '$2,265.'

"5. Was the interpleader, the Mars Hill Trust Company, the owner of the proceeds of draft attached in this case, at the date of said attachment? Answer: 'No.' "

Judgment on the verdict for plaintiffs, and defendant appealed, assigning errors.

*Ehringhaus & Small for plaintiff.*
*W. A. Worth for defendant.*
*Thompson & Wilson for intervener.*

HOKE, J. According to the evidence and contentions of both of the parties, the plaintiff had a reasonable time in which to accept defendant's offer, and it is held in this jurisdiction that when men of fair minds can come to differing conclusions upon it, the question of reasonable time is for the jury. *Holden v. Royall,* 169 N. C., 676-678; *Clause v. Lee,* 140 N. C., 552; *Blalock v. Clark,* 137 N. C., 140. In application of the principle, and under a proper charge, the jury have necessarily determined that defendant's offer continued to be an open one, and this being true, the further instruction of his Honor is in full accord with the authorities on the subject, that if plaintiff mailed his letter of acceptance at Elizabeth City on 29 November, enclosing check, and before notice of withdrawal received, the contract was "consummated," though defendants had mailed such notice at Mars Hill on the day previous. *Patrick v. Bowman,* 149 U. S., 411; *Tayloe, Appellant, v. Merchant Fire*

*Ins. Co.,* 50 U. S., 390; *Brayer v. Shaw,* 198 Mass., 198; *Wheat et al. v. Cross,* 31 Md., 99; American notes to Benjamin on Sales (7 ed.), p. 78; *Byrnes v. Van Trenhoven,* 5th L. Rep., 1879-1880, C. P. D., p. 344; Anson on Contracts, sec. 51; 1st Paige on Contracts (2 ed.), sec. 134.

The precise case is presented in *Patrick v. Bowman, supra,* where it was held, among other things: When an offer is made and accepted by the posting of a letter of acceptance before notice of withdrawal is received, the contract is not impaired by the fact that a revocation had been mailed before the letter of acceptance.

And in *Wheat, etc. v. Cross, supra,* in facts not dissimilar to those presented here, it was held: "That until notice of withdrawal actually reached the vendor, the offer was continuing and the acceptance thereof by him completed the contract."

And stating the rule generally prevailing on the subject in Paige on Contracts (2 ed.), sec. 134, it is said: "Revocation of an offer which has been made to some specific individual must in the absence of a statute be communicated to the offeree before the offeree has accepted such offer in order that such revocation may have any legal effect. A revocation sent by mail or telegraph is ineffectual as a general rule until received by the offeree."

And the issue on damages has also been decided under approved principles: The difference between the contract price and market value at the time when and place where the goods should have been delivered by the terms of the contract. *Richardson v. Woodruff,* 178 N. C., 52 (plaintiff's appeal); *Tillinghast v. Cotton Mills,* 143 N. C., 268; *Hosiery Mills v. Cotton Mills,* 140 N. C., 452.

True, in certain aspects of the case the jury, on this issue, was allowed to consider a loss of profits on resale in the Elizabeth City market, provided the pertinent conditions were known to vendors, and plaintiffs were unable to procure other potatoes for resale in the usual course of their business, and there seems to be facts in evidence to justify the submission of that view under the principles approved in *Gardner v. Tel. Co.,* 171 N. C., 404, and other like cases. But the damages were clearly awarded by the jury under the lower estimate and by the difference in the contract price and market value as heretofore stated.

As to the claim of the intervener, there were facts in evidence permitting the inference that the Mars Hill Bank took and held the draft and its proceeds as collecting agent of defendants and not as owner, and this view being accepted by the jury, its claim has been properly disallowed. *Worth Co. v. Feed Co.,* 172 N. C., 335; *Davis v. Lumber Co.,* 130 N. C., 174.

We find no error to appellant's prejudice, and the judgment on the verdict is affirmed.

No error.